UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-61541-BLOOM/Valle

CAIR FLORIDA, INC.,

      Plaintiff,

v.

TEOTWAWKI INVESTMENTS, LLC,
*d/b/a Florida Gun Supply*,

      Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss, ECF No. [12] ("Motion"), Plaintiff's Complaint, ECF No. [1] ("Compl."), as well as Defendant's Request for Judicial Notice, ECF No. [13] ("Request"). The Court has reviewed the Motion, the Request, all supporting and opposing filings, and the record in this case. For the following reasons, the Motion is granted and the Request is deemed moot.

### I.  Background

On July 29, 2015, Plaintiff American-Islamic Relations Florida, Inc. ("Plaintiff" or "CAIR-FL") brought this civil action against Defendant Teotwawki Investments, LLC, d/b/a Florida Gun Supply ("Defendant" or "Florida Gun Supply") for religious discrimination pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.* Plaintiff claims that, on or about July 17, 2015, Florida Gun Supply "declared that it was a 'Muslim Free Zone.'" Compl. ¶¶ 1, 12. CAIR-FL is a Florida non-profit corporation, which "was established in 2001 to challenge stereotypes of Islam and Muslims and defend civil liberties." *Id.* ¶¶ 4-5.

"Florida Gun Supply's discriminatory declaration that it has implemented a 'Muslim Free Zone' was viewed on national television and on the internet by many Muslims in Broward and Miami-Dade Counties, Florida." *Id.* ¶ 16. Florida Gun Supply offers various activities to the general public including the exhibition and sale of guns as well as gun safety and shooting classes at its shooting range. Compl. ¶¶ 19-31. However, Plaintiff alleges that Defendant "does not allow Muslims to benefit from the entertainment it provides the general Non-Muslim public." *Id.* ¶ 32. Defendant requires that Muslims to take an oath, but does not require non-Muslims to do the same. *Id.* ¶¶ 34-35. Thus, it "has singled out Muslims as a group of people that it intends to treat differently." *Id.* ¶ 36. Additionally, the "Muslim Free Zone" segregates and discriminates against Muslims. *Id.* ¶¶ 39-40.

For these reasons, the Complaint alleges that CAIR-FL and the constituency that it represents "have been injured and continue to be injured" by Florida Gun Supply, as a place of exhibition and entertainment, as defined by 42 U.S.C. § 2000a (b)(3). *Id.* ¶¶ 41-43. During the past ten days, in instituting the "Muslim Free Zone" policy, Defendant "has withheld, deprived or attempted to [deprive Plaintiff and its constituency of their civil rights] by expressing that it is a 'Muslim Free Zone' where Muslims will be held to a different standard than non-Muslims in violation of 42 U.S.C. § 2000a." *Id.* ¶¶ 44-45, 47-48. Further, "[t]he policy statements made by Florida Gun Supply threaten and intimidate CAIR-FL and the people [for whom] the organization exists to protect from discrimination." *Id.* ¶ 46. Plaintiff "demands an injunction against Florida Gun Supply prohibiting it from discriminating against Muslims, restraining Florida Gun Supply from instituting any policies or practices that discriminate or segregate people on the basis of religion as well as attorneys' fees and costs pursuant to 42 U.S.C. § 2000a-3(b)." *Id.* ¶ 49.

## II.  Legal Standard

Rule 8 of the Federal Rules requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true.").  However, although a court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions.  *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d

1342, 1352 (11th Cir. 2006).  The Supreme Court was clear that courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Accordingly, a court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  Nevertheless, when reviewing a motion to dismiss under Rule 12(b)(1), the Court may consider matters outside of the pleadings relevant to a factual attack on jurisdiction, including judicially noticed documents.  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  Similarly, under Rule 12(b)(6), "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).  "In addition, a district court may consider judicially noticed documents . . . regardless of which Rule 12 standard applies." *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)); *see also* Fed. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding.").

Although a court has "wide discretion to take judicial notice of facts," such discretion must be exercised with caution. *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1204-05 (11th Cir. 2004) (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)) ("'The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court.'"). Pursuant to Rule 201(b), "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2)

can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *Bryant*, 187 F.3d at 1278 ("Fed. R. Evid. 201(b) provides for taking judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").  Through this lens, the Court addresses the instant pleadings.

### III. Discussion

Plaintiff alleges that Defendant violated Title II of the Civil Rights Act, which prohibits discrimination based on protected categories, including religion, in the provision of "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation."  42 U.S.C. § 2000a.  Defendant seeks dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of jurisdiction and failure to state a claim, respectively.  Fed. R. Civ. P. 12(b)(1), (b)(6).  Additionally, Defendant requests that the Court take judicial notice of three facts pursuant to Rule 201(b) of the Federal Rules of Evidence.  *See* Request at 1-2; Fed. R. Evid. 201(b).

In its Motion, Defendant argues, in the alternative, that the Complaint should be dismissed because: (1) Plaintiff has not alleged sufficient facts to demonstrate actual present harm or a significant possibility of future harm such that the Court lacks jurisdiction under Article III to consider this case; (2) Defendant is not a "place of public accommodation" subject to 42 U.S.C. § 2000a as a matter of law[1]; (3) Plaintiff's allegations of discrimination are

---

[1] Section 2000a(b)(3) defines as a place of public accommodation "any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment."  42 U.S.C. § 2000a(b)(3); *see Smith v. Young Men's Christian Ass'n of Montgomery, Inc.*, 462 F.2d 634, 647-48 (5th Cir. 1972) (citations omitted) (finding that private club exemption pursuant to 42 U.S.C. § 2000a(e) could not include "quasi-public" establishment; and noting that the § 2000a(b)(3) definition has been found to include "a public establishment where entertainment takes the form of direct participation in some sport or activity as well as to an establishment where patrons are entertained as spectators or listeners").  The

conclusory and, thus, do not meet the minimum pleadings standards; and (4) Defendant is nonetheless shielded from civil liability by the First Amendment.[2]  *See* Motion at 1.  Regarding jurisdiction, Plaintiff counters that an organization that exists to protect a group and pleads actual or threatened injury has standing to sue.  *See* ECF No. [23] ("Plaintiff's Response" or "Pl. Resp.") at 1-2.[3]  Plaintiff is correct generally – but, with one significant caveat.  This kind of standing, referred to as "organization standing," does not obviate a party from the jurisdictional requirement of pleading *imminent* injury to either the organization itself or to one of its members or constituents.  *See, e.g.*, *Ga. Latino Alliance for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1260 (11th Cir. 2012) (discussing organizational standing).

Defendant argues that this Court is without jurisdiction to address Plaintiff's claims.  As Plaintiff lacks standing to assert those claims, there is no case or controversy capable of adjudication here.  *See Mingkid v. U.S. Atty. Gen.*, 468 F.3d 763, 768 (11th Cir. 2006) ("Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'").  Standing may arise in two different contexts for an organization:

> First, an organization may enjoy standing in its own right.  That is, where an organization itself has experienced an injury in fact and seeks to vindicate its own rights, it has standing to pursue claims arising out of those injuries.  Included within this type of standing is an organization's ability to assert the rights of its members to the extent that the challenged

---

Court notes that the Motion concedes that Defendant generally permits the public to enter the shooting range.  *See* Motion at 12.

[2] Thus, the Motion does not deny the allegations set forth in the Complaint.  Defendant is cautioned that Title II of the Civil Rights Act was designed to redress the *very* type of circumstances presented by the instant allegations, to the extent that they are accurate.  The legislative history reveals that the primary purpose of the Act was to remove "the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public because of" a protected characteristic, like race or religion.  S. Rep. No. 88-872 (1964), reprinted in 1964 U.S.C.C.A.N. 2355, 2370; *see* H.R. Rep. No. 88-914 (1964), reprinted in 1964 U.S.C.C.A.N. 2391, 2393 (Title II will "make it possible to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public.").

[3] Otherwise, Plaintiff contends that the allegations in the Complaint are sufficient to state a claim.  *See generally id.*

practices negatively affect the associational ties of the organization's members.  In the second type of standing that an organization may have, an organization may enjoy standing solely as the representative of its members.

*Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1300 (S.D. Fla. 2013); *see Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1279 (11th Cir. 2015) (citations omitted) ("An organization has standing to bring an action on its members' behalf if (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").  Courts refer to this second kind of standing as "associational standing."  *See, e.g.*, *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1353-54 (11th Cir. 2009).  Where declaratory, injunctive, or other forms of prospective relief are sought, "[an] Advocacy Center may sue on behalf of its constituents like a more traditional association may sue on behalf of its members." *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999).

In Defendants' view, Plaintiff has not suffered an injury-in-fact, therefore, depriving it of standing to sue.  *See, e.g.*, *Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) ("Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressability."); *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003) ("To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision.").  "The battle over standing in this case centers on the first requirement, and specifically on whether the injury the plaintiffs suffered was imminent." *American Civil Liberties Union of Florida, Inc. v. Miami-Dade County School Bd.*,

557 F.3d 1177, 1190 (11th Cir. 2009).  "Immediacy requires only that the anticipated injury

occur with[in] some fixed period of time in the future."  *Florida State Conferences of N.A.A.C.P.*

*v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008).  "Immediacy, in this context, means

reasonably fixed and specific in time and not too far off."  *ACLU of Florida*, 557 F.3d at 1193-

94.

 Defendant avers that Plaintiff has failed to allege facts that afford standing to Plaintiff or

any of its members or constituents:

> [T]here are no facts demonstrating that Plaintiff was (or will be)
> unlawfully discriminated against.  There are no facts demonstrating that
> *Plaintiff* has attempted to purchase a firearm from Defendant and was
> denied on the basis of its religion or has attempted to attend a gun safety
> class and was denied on the basis of its religion or attempted to do
> anything at Defendant's retail gun store and was denied on the basis of
> religion.  And there are no allegations that *Plaintiff* will attempt to do any
> such activities at Defendant's retail gun store in the future and be
> unlawfully denied on the basis of religion.  Thus, Plaintiff has not alleged
> facts to demonstrate *actual* present harm or a *significant possibility* of
> future harm as required by Article III.

Motion at 5-6.  The Court must agree that Plaintiff has insufficiently alleged imminent harm.

 The Complaint contains only bald, conclusory allegations devoid of factual enhancement.

Regarding any injury, the Complaint states that "Florida Gun Supply's discriminatory

declaration that it has implemented a 'Muslim Free Zone' was viewed on national television and

on the internet by many Muslims in Broward and Miami-Dade Counties, Florida."  *Id.* ¶ 16.

Thus, CAIR-FL and the constituency that it represents "have been injured and continue to be

injured" by Florida Gun Supply.  *See id.* ¶¶ 41-43.  Over "the past ten days," Defendant "has

withheld, deprived or attempted" to deprive Plaintiff and its constituency of their civil rights "by

expressing that it is a 'Muslim Free Zone' where Muslims *will be held* to a different standard

than non-Muslims."  *Id.* ¶¶ 44-45, 47-48 (emphasis added).  Further, "[t]he policy statements

made by Florida Gun Supply threaten and intimidate CAIR-FL and the people [for whom] the organization exists to protect from discrimination." *Id.* ¶ 46. This reflects the entirety of Plaintiff's allegations of injury-in-fact.

The only allegation of any future harm is that "Muslims *will be held* to a different standard than non-Muslims." The Eleventh Circuit has repeatedly held that this kind of naked claim fails to satisfy the standing requirement. *See, e.g.*, *Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006). In *Elend*, after alleging that the Secret Service enjoined plaintiffs from protesting outside of a political rally at the Tampa Sun Dome, with President George W. Bush in attendance, plaintiffs sought to enjoin the Secret Service from taking similar action in the future. *See id.* They claimed to have standing because they "fully intend to peacefully express their viewpoints in the future in a manner similar to their activities on November 2, 2002 in concert with presidential appearances at the [] Sun Dome and at other locations around the country." *Id.* at 1204. The Circuit Court relied on the Supreme Court's decision in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), in holding that plaintiffs' allegations were not enough to confer Article III standing. *Id.* at 1208.

In *Lujan*, the Supreme Court considered the standing of two plaintiffs seeking injunctive relief to protect endangered species pursuant to the Endangered Species Act. *Id.* at 563-64. The first plaintiff sued to enjoin the rehabilitation of the Aswan High Dam in Egypt because of endangered Nile crocodiles. *Id.* at 563. In a 1988 affidavit, this first plaintiff swore that she intended to return and at that time would "suffer harm in fact as the result of the American role in overseeing the rehabilitation of the Aswan High Dam on the Nile." *Id.* (alternations adopted). The second plaintiff sought to protect various endangered species in Sri Lanka, after having traveled there only once. *Id.* at 563-64. When questioned about her intent to return to Sri Lanka

during her deposition, the second plaintiff confessed that she had no current plans: "'I don't know [when]. There is a civil war going on right now. I don't know. Not next year, I will say. In the future.'" *Id.* at 564. Except for a generalized wish to return to Egypt and Sri Lanka "in the future," as similarly expressed in the instant allegations, neither plaintiff offered any indication as to when they would next visit these countries. *Id.* at 563-64. The Supreme Court held that "such 'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* at 564 (citation omitted).

Following this standard, the Eleventh Circuit affirmed the district court's dismissal for lack of standing in *Elend*, explaining that "[p]laintiffs' avowed intention to protest in a similar manner in the future is akin to the plaintiff in *Lujan* who declared, 'I intend to go back to Sri Lanka [to observe endangered species], but confessed that she had no current plans: I don't know [when].'" *Elend*, 471 F.3d at 1209 (quoting *Lujan*, 504 U.S. at 564); *see also Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1338-1340 (11th Cir. Nov. 1, 2013).

Conversely, in *Fla. NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2009), the Eleventh Circuit found that plaintiffs, voting rights organizations, sufficiently alleged imminent injury. *Fla. NAACP* involved a state statute that required all applicants for voter registration to include relevant personal information in their applications. *See id.* at 1156. If an applicant gave information that did not match the information contained in the state database, the state would not register that applicant until the error was fixed – and the applicant often was not notified of the error before voter rolls were closed in advance of an upcoming election. *See id.* at 1156-57. Accordingly, the organizations sued the state in September 2007, alleging that the statute's interference with the registration of some applicants would violate their members' constitutional

Case No. 15-cv-61541-BLOOM/Valle

and statutory rights to vote in the November 2008 presidential election.  *Id.* at 1158-61.  They further alleged that "they intend[ed] to increase voter registration efforts and anticipate increased registration applications ahead of the upcoming presidential election."  *Id.* at 1161.  The state moved to dismiss, asserting that the organizations lacked standing, in part because they had not alleged an imminent injury.  *Id.*

The Eleventh Circuit affirmed the district court's finding that plaintiffs had sufficiently alleged an imminent injury.  *Id.*  The Court noted that these allegations were dissimilar to those presented in *Elend*, where the "plaintiffs failed to allege when, where, and how such protects were going to occur in the future."  *Id.*  In contrast, the plaintiffs in *Fla. NAACP* "alleged when and in what manner the alleged injuries are likely going to occur."  *Id.*  These claims satisfied the requirement of immediacy.  *See id.*

Distinguishing *Fla. NAACP*, the following year, the Eleventh Circuit denied standing to plaintiffs in *ACLU of Florida*, 557 F.3d at 1194.  In that case, ACLU members who were parents of students sought to enjoin the school board after it removed books from a school's library.  *Id.*  In addressing the school board's motion to dismiss for lack of standing, the Court held that plaintiffs' declarations "merely establish a free-floating desire to access the other books in the [] series, a desire untethered to any intended action during any reasonably specific period of time. In that respect these declarations are more like the ones in the *Lujan* and *Elend* cases, where imminence was found to be lacking, than they are like the one[] in . . . *Fla. NAACP*, where it was found to be present."  *Id.* at 1196.

"Just as the *Lujan* plaintiffs' general desire to have wildlife preserved for their viewing someday was insufficient to establish an imminent injury in fact," *id.*, the general desire of Plaintiff in this case to have Muslims able to access Defendant's shooting range someday in the

future is insufficient as well.  There are simply no facts grounding the assertion that Plaintiff and/or one of its constituents will be harmed – Plaintiff has failed to allege "when and in what manner the alleged injuries are going to occur."  *Fla. NAACP*, 552 F.3d at 1161.

Following the Eleventh Circuit canon of case law in this context, the Court cannot find jurisdiction when faced with such indefinite claims establishing no intention, let alone an immediate one, on behalf of any party.  Indeed, "we should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none. . . .  If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." *Elend*, 471 F.3d at 1206 (citation omitted).  Because the Court lacks jurisdiction to hear the instant action, it refrains from further consideration of Defendant's arguments in the Motion and the Request.

### IV. Conclusion

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [12]**, is **GRANTED**.

2. Defendant's Request for Judicial Notice, **ECF No. [13]**, is deemed **MOOT**.

3. Plaintiff's Complaint, **ECF No. [1]**, is **DISMISSED**.

4. The Clerk is **DIRECTED** to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 23rd day of November, 2015.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record